IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WRICKLEY L. MOSLEY,                                                    CV. 06-874-AS

       Plaintiffs,                                      FINDINGS AND
                                                                                    RECOMMENDATION
  v.

DEPT. OF ADMINISTRATIVE SERVICES;
GUY HALL; G. LANEY; J. BURCHETT;
P. MCDONOUGH; G. ALLEN; A. PLUM;
J. CAPPS; G. LYTLE and D. WETTLAUFER,

       Defendants.
_____

ASHMANSKAS, Magistrate Judge:

  Plaintiff Wrickey L. Mosley ("Plaintiff"), an inmate at the Two Rivers Correctional Institution ("TRCI"), filed this action under 42 U.S.C. §1983 asserting various violations of his civil rights as well as various common law tort claims. Plaintiff alleges that the Department of Administrative Services (the "Department") and the following employees of the Oregon Department of Corrections ("ODOC") stationed at TRCI: Guy Hall, Superintendent; Garrett Laney, Asst.

Page -1- FINDINGS AND RECOMMENDATION               *{SIB}*

Superintendent for Security; James Burchett, Correctional Lieutenant; Paul[1] McDonough, Correctional Officer; Gaylord Allen, Correctional Corporal; Allen Plum, Correctional Sergeant; Joe Capps, Hearings Officer; Dr. Greg Lytle, Chief Medical Officer; and Dorothy Wettlaufer, Nurse Manager (collectively "Defendants");[2] engaged in the excessive use of force and deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Plaintiff also alleges that Defendants failed to provide him with sufficient notice of his disciplinary hearing in violation of the due process clause of the Fourteenth Amendment. Additionally, Plaintiff asserts the common law claims of stalking, assault and battery, negligence and actual harm and injury. Defendants move for summary judgment on Plaintiff's civil rights claims and ask the court to remand the remaining state claims.

## Legal Standard

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the Constitution or federal statutes. Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995). In civil rights cases involving a plaintiff proceeding *pro se*, this court construes the pleadings liberally and affords the plaintiff the benefit of any doubt. McGuckin

---

[1]There appears to be some confusion about Officer McDonough's first name. He is referred to as Paul in Defendants' Answer and Statement of Facts but as Patrick in his affidavit.

[2]Plaintiff also names as defendants John and Jane Doe correctional staff and John and Jane Doe health service employees. "As a general rule, the use of 'John Doe' to identify a defendant is not favored. However, situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff has had plenty of time to discover the names of the John and Jane Doe defendants and has not amended the complaint to add them. Accordingly, the court should dismiss the Doe defendants.

v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992). The wide latitude given to *pro se* litigants ensures that they do not lose their right to a hearing on the merits when civil rights are at issue. Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion for summary judgment, a court may neither weigh evidence nor make credibility determinations, but must view the entire record in the light most favorable to the non-moving party. Id. at 255. While the court must disregard all evidence in favor of the moving party that a jury would not be required to believe, it should give credence to evidence supporting the moving party if it is uncontradicted and unimpeached. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1997). A party opposing a properly supported motion for summary judgment "may not respond simply with general attacks upon the [movant's] credibility, but rather must identify affirmative evidence from which a jury could find that the [opposing party] has carried his or her burden of proving" the elements of his or her claim. Id. The opposing party may not rest on conclusory allegations or mere assertions, Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), but must present significant probative evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Such evidence must be sufficient, taking the record as a whole, to allow a rational jury to

find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Where "the factual context renders [the non-moving party's] claim implausible . . ., [that party] must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary" to show that there is a genuine issue for trial. Id.

## Background

Plaintiff, who is appearing *pro se* in this action, has not filed a response to the summary judgment motion despite receiving a summary judgment advice notice[3] mailed by the court in mid-September 2006, and being referred to such notice by the court in mid-March 2007, shortly after the summary judgment motion was filed. However, Plaintiff filed a verified complaint in accordance with 28 U.S.C. §1746. The verified complaint is based, at least in part, on Plaintiff's personal knowledge of admissible evidence. As such, it constitutes an opposing affidavit and must be

---

[3]The summary judgment advice notice informed Plaintiff that:
 "When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. Local Rule 56.1 of the District Court requires that the party moving for summary judgment file a separate Concise Statement of Material Facts. As part of your opposition to a motion for summary judgment, you must include a response to the separate Concise Statement of Material Facts. You must respond to each numbered paragraph of the moving parties facts by: (1) accepting or denying each fact contained in the moving party's concise statement, or (2) articulating opposition to the moving party's contention of interpretation of the undisputed material fact. You are advised that material facts set forth in the moving party's concise statement will be deemed admitted unless specifically denied, or otherwise controverted by you.

considered by the court in conjunction with Defendants' motion for summary judgment. <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 (9th Cir. 1995). Accordingly, Defendants' concise statement of facts, set forth in its entirety below, is adopted except as specifically noted.[4]

> 1. Plaintiff is an inmate in the care and custody of the Oregon Department of Corrections ("ODOC"). At all times material to his complaint, plaintiff was housed at Two Rivers Correctional Institution ("TRCI").
>
> 2. Defendants are ODOC employees at TRCI. Dr. Greg Lytle is the Chief Medical Officer and Dorothy Wettlaufer is a Nurse Manager. Joe Capps is a Hearing Officer. Garrett Laney is the Security Manager. James Burchett, Allen Plum, Gaylord Allen, and Paul McDonough are Correctional Officers.
>
> 3. On March 26, 2005, plaintiff was returning from a shower in the Segregation Unit at TRCI. He was restrained during the transport from the shower to his cell, and was escorted by Corporals McDonough and Allen.
>
> 4. After plaintiff entered his cell, he was instructed to place his hands in the cuff port so that his handcuffs could be removed. As Corporal McDonough attempted to unlock the restraints, plaintiff flexed his arms and tensed his wrists, making it difficult to unlock the restraints.
>
> 5. After Corporal McDonough managed to unlock the restraints, plaintiff rapidly pulled his arm forward, rather than waiting for the restraint bar to be lifted. Because the restraint bar was still down, plaintiff received a superficial scratch on his hand.
>
> 6. Neither officer recalled or reported any use of force.
>
> 7. During the removal of restraints, plaintiff disobeyed several orders and used profanity, resulting in a misconduct report.
>
> 8. Due to a miscommunication, it was believed that plaintiff waived his right to attend his hearing for this disciplinary violation, and a hearing was held in his absence. When the error was discovered, the case was reopened in order to hold another hearing.
>
> 9. Plaintiff received notice of the disciplinary violation for which he was charged through this issuance of the misconduct report. Hearings Officer asked plaintiff is he was ready to proceed on the date of the hearing, and plaintiff responded that he

---

[4]The citations to the record have been omitted.

was ready.  Plaintiff was found guilty of the disciplinary violation.

10. Plaintiff sought medical treatment following the incident, and the nurse recorded a 2.5 cm "very superficial" laceration.  Plaintiff has also experienced persistent shoulder pain, and has seen ODOC physicians repeatedly as a result of these symptoms. Physicians engaged in diagnostic measures, including four different sets of x-rays, to determine the cause of plaintiff's symptoms.  Because the x-rays showed no fractures or other bone-related concerns with plaintiff's shoulder, doctors initially diagnosed plaintiff with a shoulder strain, and later with degenerative disc disease, and prescribed anti-inflammatory medication, rest, and hot packs.

11. In August 2005, plaintiff broke his hand and injured his shoulder when exiting the top bunk (he has since been prescribed a lower bunk).  Following these injuries, plaintiff's physicians have noted that plaintiff has demonstrated full range of motion, and have consistently recommended anti-inflammatory medication, rest and heat therapy.  No physician has prescribed physical therapy for plaintiff.

Plaintiff alleges in his verified complaint that he complained to McDonough's supervisor for inappropriate sexual comments directed at Plaintiff in the past.  Plaintiff asserts that McDonough retaliated against Plaintiff for these complaints by grabbing his left wrist, little finger and thumb and abruptly twisting Plaintiff's arm beyond 180 degrees causing intentional pain/harm/injury and inflicting grossly undue punishment while Allen watched. Complaint at 3.  Plaintiff denies resisting or threatening the staff in any fashion during the removal of the handcuffs.  Burchett and Plum allegedly refused to respond to Plaintiff's needs after the injury occurred.  Plaintiff also alleges that Wettlaufer and Lytle advised the health care workers not to honor Plaintiff's daily sick call requests and denied Plaintiff's request for physical therapy and use of the whirlpool.

## Discussion

**Department of Administrative Services**

Defendants ask the court to dismiss the Department asserting that the Department has not waived its sovereign immunity and it not a "person" for purposes of Section 1983.  The Eleventh Amendment  prohibits suits for monetary damages against a state or state agency in federal court.

Seminole Tribe of Florida v. Florida, 517 U.S. 44, 64-68 (1996). This immunity prevents a suit against a state by private parties in federal court unless Congress has validly abrogated the state's immunity, or unless the state has expressly waived it. Id. For the purposes of the Eleventh Amendment, "state" includes the state itself, its agencies, and state officials acting in their official capacities. Will v. Dept. of State Police, 491 U.S. 58, 71 (1989).

The Supreme Court has expressly found that Congress did not abrogate states' Eleventh Amendment immunity when it enacted Section 1983. Will, 491 U.S. at 69-70. Because Congress intended Section 1983 to apply to "persons" and states are not "persons," that statute does not operate to abrogate a state's immunity under the Eleventh Amendment. This immunity extends to state agencies. Id. at 71. Thus, Plaintiff's Section 1983 suit against the Department should not be allowed unless the State of Oregon expressly waived the Departments' immunity. Seminole Tribe, 517 U.S. at 64-68.

A state may waive its sovereign immunity by expressly consenting to be sued, either via statute or by consenting to a particular action. The Courts have repeatedly held that consent must be express, rather than implied. Edelman v. Jordan, 415 U.S. 651, 673 (1974), Will, 491 U.S. at 63. Here, the State of Oregon does not expressly consent to a suit against the Department, and there is no Oregon statute which would waive its immunity. Thus, the Department is protected by Eleventh Amendment immunity. Accordingly, this court lacks subject matter jurisdiction over the Department for the Section 1983 claim. Additionally, the Department does not qualify as a person under Section 1983 and is, therefore, not a proper defendant for Plaintiff's Section 1983 claims. Defendants' motion to dismiss the Department is well-taken and should be granted.

*Respondeat Superior* **Liability under Section 1983**

State officials cannot be held liable under Section 1983 on a *respondeat superior* theory. King v. Attiyeh, 814 F.2d 565, 568 (9th Cir. 1987). Liability is only appropriate where the official played an affirmative part in the alleged deprivation of constitutional rights. Id. In order to hold a supervisor liable under Section 1983, the plaintiff must prove either: (1) the supervisor participated in or directed the constitutional violations; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001). There is no evidence that Superintendent Hall or Asst. Superintendent Laney personally participated in or directed any of the offensive conduct alleged by Plaintiff. Similarly, there is no evidence of a causal connection between Hall or Laney's conduct and the alleged constitutional violation. Hall and Laney are not viable defendants and should be dismissed.

**Eighth Amendment Claims**

Plaintiff alleges claims for both excessive force and denial of medical care under the Eighth Amendment. For the reasons set forth below, Plaintiff is unable to support either claim.

- Excessive Force

The relevant inquiry in determining whether prison officials used excessive physical force in violation of the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992)(citing Whitley v. Albers, 475 U.S. 312 (1986)). The factors to be considered in making this determination are:

> (1) the extent of the injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.

Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003)(citing Hudson, 503 U.S. at 7). *De*

*minimis* use of physical force by guards is excluded from the Eighth Amendment's prohibition. Hudson, 503 U.S. at 9-10.

Plaintiff sought medical help after the incident with McDonough. The treating nurse indicated that Plaintiff had a "very superficial" laceration on the back of his left hand. Shelton Affidavit, Attachment 1, Page 1. Plaintiff was advised to keep the area and his hands clean. Two days later, Plaintiff complained of left shoulder pain, burning fingers and cramping hands. He given heat packs, ice packs and pain medication. An x-ray taken five days after the incident revealed "no evidence of a recent fracture or other significant bony abnormality." Id. at 20.

Plaintiff's allegations of severe permanent injuries are not supported by the medical record. It appears that Plaintiff suffered only a superficial laceration to the back of his left hand and left shoulder pain, which was treated with heat, ice and pain medication. Clearly not the kind of injury protected by the Eighth Amendment.

Additionally, the evidence presented by Defendants support their argument that Plaintiff's minor injuries were caused by Plaintiff's refusal to follow the directions of McDonough. Both McDonough and Allen represent that Plaintiff refused to relax and allow McDonough to remove the handcuffs. This is supported by the Findings of Fact issued by Capps. The only evidence offered by Plaintiff in response is a statement that "[d]uring the events the plaintiff did not resist or threaten staff in any fashion or break any rules in order to have the handcuffs removed after a shower for no apparent reason." Complaint at 4. This is not sufficient to raise a genuine issue of material fact with regard to Plaintiff's compliance with McDonough's direction to relax his arms and wrists.

Based on the minimal injury suffered by Plaintiff and the need created by Plaintiff to use some force to remove the handcuffs, the court finds that McDonough's actions were justified.

Plaintiff has failed to support his Eighth Amendment claim for excessive force.

- Denial of Medical Care

The government cannot be deliberately indifferent to the serious medical needs of its prisoners. McGuckin, 974 F.2d at 1059 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Such indifference may be shown by the way in which prison staff provide, or fail to provide, medical care. Id. Serious needs include those conditions that significantly affect an individual's daily activities or that involve the existence of chronic and substantial pain. Id. at 1059-60.

Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. McGuckin, 974 F.2d at 1059. Inadequate treatment due to malpractice or even gross negligence does not amount to a constitutional violation. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990); see also Estelle, 429 U.S. at 106. Mere delay in medical treatment is not enough to sustain an Eighth Amendment claim absent evidence of substantial harm caused by the delay. Wood, 900 F.2d at 1335.

Furthermore, a prisoner claiming deliberate indifference must allege facts sufficient to indicate a culpable state of mind on the part of defendants. Wilson v. Seiter, 501 U.S. 294, 297 (1991). "Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering." Anderson v. City of Kern, 45 F.3d 1310, 1313 (9th Cir.). "The test for whether a prison official acts with deliberate indifference is a subjective one: the official must know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (citing Farmer v. Brennan, 522 U.S. 825, 837 (1994)).

Plaintiff asserts that Defendants denied him medical care in violation of the Eighth Amendment by failing to provide proper medical treatment for his injuries, primarily by denying his requests for physical therapy and a whirlpool bath. The record reveals that Plaintiff received treatment for all of his alleged injuries. X-rays disclosed no serious or permanent injuries. Steve Shelton, M.D., reviewed the records and determined that the care Plaintiff received "was, and continues to be, within the standard of care in the community." Shelton Affidavit at 4. As noted by Judge Haggerty in his Order denying Plaintiff's motion for a temporary restraining order:

> Other than his own assertions, [Plaintiff] puts forth no evidence that his shoulder injury is sufficiently serious to require the physical therapy demanded. Moreover, Plaintiff fails to demonstrate deliberate indifference. At most, Plaintiff has established only a disagreement with the treatment plan provided, which does not form the basis of an Eighth Amendment violation. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Order dated January 5, 2007, at 5. Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

**Fourteenth Amendment Claims**

Plaintiff asserts that Defendants violated his right to due process when they failed to give him adequate notice of the disciplinary hearing, conducted the hearing in his absence and issued inadequate findings of fact. This court has stated that:

> When an prisoner faces disciplinary charges, prison officials must provide the prisoner: (1) a written statement at least 24 hours before the disciplinary hearing which includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance when the charges are complex or the inmate is illiterate.

Wolff v. Hood, 242 F.Supp.2d 811, 818 (D.Or. 2002)(citing Wolff v. McDonnell, 418 U.S. 539, 563-570 (1974)).

Page -11- FINDINGS AND RECOMMENDATION                                                                 {SIB}

There is no dispute that Plaintiff received notice of the charges against him through the issuance of a misconduct report dated March 26, 2005. Defendants concede that, due to administrative error, Plaintiff was not present at the initial hearing. However, the record is clear that Plaintiff was allowed to appear at a second hearing on the charges and indicated that he wished to proceed with the hearing at that time. The fact that the hearings officer noted in the Findings of Fact that the incident occurred while Plaintiff was being handcuffed and escorted from the shower rather than having the handcuffs removed at his cell is not relevant and did not prejudice Plaintiff in any way. Plaintiff was given the due rights afforded him under the Fourteenth Amendment. Defendants are entitled to summary judgment on this claim as well.

**Qualified Immunity**

Defendants also contend that they are entitled to qualified immunity on Plaintiff's constitutional claims because they did not violate Plaintiff's clearly established rights. Because the court has found that Plaintiff has failed to present sufficient evidence to raise a genuine issue of material fact with regard to these claims, the court need not address the qualified immunity arguments.

**State Law Claims**

Defendants are entitled to summary judgment on all of Plaintiff's federal claims. The court has not addressed, in any manner, any of the remaining state law claims. The court should decline to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

Conclusion

Defendants' motion to dismiss the Department, Hall and Laney and for summary judgment on the remaining claims should be GRANTED. The John and Jane Doe defendants, as well as

Plaintiff's remaining state law claims, should be dismissed.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than **June 15, 2007**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 29th day of May, 2007.

　　　　　　　　　　　　　　　　　　　　　DONALD C. ASHMANSKAS
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge